MISSOURI PACIFIC RAILWAY COMPANY v. MORRISON.

Opinion delivered January 16, 1928.

1.  RAILROADS—KILLING DOG ON TRESTLE—NEGLIGENCE.—Evidence *held* sufficient to require a submission of the case to the jury, where a dog was run over while on a trestle, due to the alleged negligence and failure of the train to stop in time to avoid killing the dog.

2.  TRIAL—INSTRUCTION.—Where the court instructed the jury, "you have no right to arbitrarily disregard the statement or testimony of any witness," it was not error to refuse an instruction "that you have no right to arbitrarily disregard the testimony of the engineer and fireman in this case."

Appeal from Crittenden Circuit Court; *G. E. Keck,* Judge; affirmed.

*Thomas B. Pryor* and *Gordon Frierson,* for appellant.

*W. B. Scott,* for appellee.

KIRBY, J. Appellant prosecutes this appeal to reverse the judgment against it for appellee for $50 damages for the alleged negligent killing of his bird dog by one of its trains.

The testimony shows that on August 9, 1925, about 6 o'clock in the afternoon, one of appellant's eastbound passenger trains ran over and killed appellee's setter dog on its track, about the middle of a 300-foot trestle beyond Earle. She was purchased at two months old for $35; was a thoroughbred registered dog, well trained, and a good hunter. Some of her puppies had sold for as much as $25 and $30 each. Appellee stated she was worth $250.

Raymond Vernon, a 14-year-old boy, found the dog on the track after the train passed. It was cut half in two. Saw the dogs on the trestle before the train came along. Heard the train whistling, and saw it stop. The dogs went to the edge of the trestle, looked over, and then went back to the center of the track. The cowcatcher struck one of the dogs, and the wheels ran over it. The train stopped just after it struck the dog, and was almost stopped when it struck the dog.

The engineer testified that he was running toward Memphis, at 6 o'clock in the daylight, and first saw the dogs 400 or 500 feet away. Could not see it sooner on account of the curve in the track. Saw a white object, and could not tell what it was; thought it was paper, for several seconds, until it moved. He immediately applied the brakes and the emergency, sanded the track, blew the whistle, and stopped the train as soon as possible. When the engine stopped, one pair of wheels, the pilot wheels, had run over the dog and cut it in two. It was lying between the rails, between the first and second trucks. Thinks the dogs were lying down when he first

noticed the objects on the track. Was keeping a lookout when he came around the curve. One of the dogs dodged and got away. This train did not stop at the station, and was making about 10 miles an hour when it passed the station, and the speed limit at the curve is 50 miles an hour. The trestle is hardly a mile east of Earle.

The fireman stated he was looking ahead at the time. First saw an object on the track 300 feet away or more; could not tell what it was. Shortly saw it move, and started to call the engineer, but he had already discovered the dog, and began to apply the brakes and blow the whistle continuously. Did all he could to stop the train. Witness thought, in fact, he had stopped short of the dog, and ran out on the trestle to get the dog off the track.

Morrison stated it was three-fourths of a mile from the station to where the dog was killed, and about 300 or 400 feet east of the city limits. An object could be seen west from where the dog was killed about one-fourth of a mile. That the curve to the east of the station was not abrupt, only about 30 degrees, and that the trainmen could have seen the dog a quarter of a mile, coming from the east.

The court refused appellant's request for a directed verdict and some of its other instructions.

It is insisted by appellant that the court erred in not directing a verdict in its favor and that the uncontradicted evidence shows that the trainmen were keeping a lookout, and did everything possible to stop the train and avoid injury to the dog after it was discovered on the tracks.

It does appear that proper care was exercised in bringing the train to a stop after the animal was discovered on the trestle, and that the effort to prevent the injury to the dog was well nigh successful, having failed by about only six feet.

It cannot be said, however, that the testimony of appellant's witnesses, as to having kept the proper look-

out, was uncontradicted, since appellee testified that the curve in the track, which the engineer said prevented his sooner discovering the dog, was not an abrupt curve and that the dog could have been seen for a quarter of a mile, if a lookout had been kept, notwithstanding the curve.

Certainly, had it been discovered sooner, the train could have been stopped and the injury prevented by the efforts made by the trainmen. The testimony of the trainmen, not being uncontradicted, did not overcome the *prima facie* case of negligence made by showing that the dog was struck and killed on the trestle by the moving train, and the court did not err in refusing to direct the verdict in favor of the railroad company.

Neither was error committed in refusing to give appellant's requested instruction, "that you have no right to arbitrarily disregard the testimony of the engineer and fireman in this case." The court told the jury that its verdict must be based upon the evidence and not upon surmise or conjecture, and, in two instructions, "You have no right to arbitrarily disregard the statements or testimony of any witness," which was a sufficient statement of the law, free from singling out any particular witness.

The majority finding no prejudicial error in the record, and the evidence being sufficient to support the verdict, the judgment is affirmed.